## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ANATOL ZUKERMAN &**
**CHARLES KRAUSE REPORTING, LLC**,

Plaintiffs,

v.

**U.S. POSTAL SERVICE**,

Defendants.

Case No. 1:15-cv-02131 (CRC)

## <u>MEMORANDUM OPINION</u>

The United States Postal Service ("USPS") permits the use of personalized postage stamps.  Believing that a bespoke stamp would help publicize an upcoming gallery exhibition, local artist Anatol Zukerman submitted a proposed design—aimed at critiquing the Supreme Court's <u>Citizens United</u> decision—to a third-party vendor that prints the customized stamps on USPS's behalf.  After the vendor rejected Zukerman's rendering as unduly "partisan or political," he and the gallery sued, alleging that USPS, through its agent contractor, had engaged in impermissible content and viewpoint discrimination in violation of the First Amendment. Currently before the Court is a motion to dismiss by USPS that raises a threshold jurisdictional question:  whether exclusive jurisdiction over the case lies with the Postal Regulatory Commission, an administrative tribunal primarily charged with adjudicating postal rate and service complaints.  The Court finds that the relevant authorizing statute vests the Commission with jurisdiction over only a handful of subject matter-specific claims, none of which may fairly

be understood to encompass core First Amendment challenges like those presented here.  The

Court will therefore deny USPS's motion and assert jurisdiction over the case.

## I.      Background

### A.      Statutory Context

In 1970, through passage of the Postal Reorganization Act ("PRA"), Congress sought "to

improve and modernize the postal service," S. Rep. No. 91-12, at 1 (1970), and "to minimize

external intrusions on the Postal Service's managerial independence," LeMay v. USPS, 450 F.3d

797, 800 (8th Cir. 2006).  As part of that effort, the PRA vested jurisdiction over "classic

questions of postal rates and services" in the hands of an administrative body called the Postal

Rate Commission, LeMay, 450 F.3d at 801; see 39 U.S.C. § 3662 (2006), while nevertheless

leaving to U.S. district courts "original . . . jurisdiction over all actions brought by or against the

Postal Service,"  39 U.S.C. § 409(a) (2006).

The Postal Accountability and Enhancement Act ("PAEA"), passed in 2006, further

defined the Commission's jurisdictional boundaries, but it kept the broad contours in place.

Now, the renamed Postal *Regulatory* Commission ("PRC" or the "Commission") is specifically

tasked with hearing complaints alleging violations of "sections 101(d), 401(2), 403(c), 404a, or

601" of Title 39.  39 U.S.C. § 3662(a).  Those sections generally pertain to "postal rates and

service standards."  Sears, Roebuck & Co. v. U.S. Postal Serv., 134 F. Supp. 3d 365, 382

(D.D.C. 2015).  At issue here is whether the facts alleged by Mr. Zukerman fall within § 403(c),

and are therefore within the jurisdiction of the Commission.  That section requires that "[i]n

providing services and in establishing classifications, rates, and fees under this title, the Postal

Service shall not . . . make any undue or unreasonable discrimination among users of the mails,

nor shall it grant any undue or unreasonable preferences to any such user."

B.    <u>Factual & Procedural History</u>

In July 2013, an art gallery owned by Charles Krause Reporting, LLC, displayed a drawing by Mr. Zukerman depicting Uncle Sam imprisoned by a snake named "Citizens United." <u>See</u> Am. Compl. ¶ 17.  The drawing was part of a collection of Zukerman's work entitled "Truth to Power: Anatol Zukerman's 'Responsible' Art." <u>Id.</u>  In order to promote an exhibition planned for February 2016 that would feature the drawing, "and to raise awareness about . . . the harm caused by the Citizens United decision," the gallery suggested that Zukerman create a custom postage stamp depicting the drawing.  <u>Id.</u> ¶¶ 18–19.  In early 2015, Zukerman submitted his proposed stamp design to Zazzle, Inc., a third-party vendor that assists USPS in administering its custom-postage program.  <u>See id.</u> ¶¶ 13, 20.  The design featured an image of the drawing with the caption "Democracy is Not for Sale." <u>Id.</u> ¶ 20.  Zazzle responded with the message that it was unable to process Zukerman's order because the submitted "design[] [was] in conflict with [the applicable] content guidelines." <u>Id.</u> ¶ 22.  In response to Zukerman's request for more information, Zazzle pointed to "special Appropriate Use Guidelines," which included a prohibition on "printing . . . any postage with content that is primarily partisan or political in nature." <u>Id.</u> ¶ 23.

Plaintiffs brought suit against USPS, initially raising both constitutional challenges and a statutory claim under 39 U.S.C. § 403(c), the material provision discussed above.  Compl. ¶ 41. USPS then moved to dismiss, arguing that the Court "lack[ed] subject-matter jurisdiction to adjudicate Plaintiffs' statutory claim" since there was an "exclusive administrative scheme to hear claims under section 403(c)," and that Plaintiffs' constitutional claims were so inextricably tied to their statutory claim—being based on the same facts—that those claims should be dismissed, too.  Defs.' Mem. Supp. First Mot. Dismiss 8–10.  After a hearing on the motion,

Plaintiffs amended their complaint, this time alleging only constitutional claims.  Am. Compl. ¶ 44.  In their Amended Complaint, Plaintiffs mainly contend that because Zazzle printed stamps promoting the 2016 presidential campaigns of Jeb Bush, Ted Cruz, and Bernie Sanders, Am. Compl. ¶ 24, its decision not to print Zukerman's <u>Citizens United</u> stamp constituted "content and viewpoint discrimination in violation of Plaintiffs' rights under the First and Fifth Amendments," <u>id.</u> ¶ 33; <u>see also</u> <u>id.</u> ¶ 44.  Nevertheless, USPS has again moved to dismiss, arguing that because Plaintiffs' allegations are "cognizable under [39 U.S.C.] § 403(c)," those claims must be "channeled . . . to the PRC for adjudication in the first instance[.]"  Defs.' Mem. Supp. Second Mot. Dismiss ("Defs.' MTD") 2.

USPS's motion turns on whether Plaintiffs' claims properly fall within the scope of § 403(c), which USPS concedes is the only potentially applicable provision conferring jurisdiction on the Commission.  As the text, structure, and legislative history of the PAEA make clear, however, Congress never intended for that provision to sweep in genuine First Amendment claims like these.  Accordingly, the Court will deny USPS's dismissal motion.

## II.   Legal Standards

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction[.]"  <u>Morrow v. United States</u>, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (quoting <u>Haase v. Sessions</u>, 835 F.2d 902, 906 (D.C. Cir. 1987)).  A court accepts all factual allegations in the operative complaint as true.  <u>Gordon v. Office of the Architect of the Capitol</u>, 750 F. Supp. 2d 82, 86 (D.D.C. 2010).  And "the plaintiff bears the burden of establishing the [c]ourt's jurisdiction by a preponderance of the evidence."  <u>Morrow</u>, 723 F. Supp. 2d at 76 (citing <u>Moore v. Bush</u>, 535 F. Supp. 2d 46, 47 (D.D.C. 2008)); <u>see also</u> <u>Arpaio v. Obama</u>, 797 F.3d 11, 19

(D.C. Cir. 2015) ("The plaintiff bears the burden of invoking the court's subject matter jurisdiction[.]").

## III.    Analysis

Much of USPS's briefing is devoted to applying Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994), and its progeny, cases which develop "a framework for determining when a statutory scheme of administrative and judicial review forecloses parallel district-court jurisdiction," where "[t]he ultimate question [at issue] is whether Congress intended exclusivity" by establishing such a scheme.  Jarkesy v. SEC., 803 F.3d 9, 12 (D.C. Cir. 2015).  But in those cases, the parties did not dispute the agency's jurisdiction—in the first instance—over the relevant claims.  Here, before the Court may determine if the PRC's jurisdiction is exclusive, it must first determine if such jurisdiction exists.  As Plaintiffs note, and as USPS does not dispute, "whether [an administrative tribunal such as] the PRC has exclusive jurisdiction over certain claims depends first on whether [it] has jurisdiction over those claims *at all*."  Pls.' Mem. Opp'n Def.'s Mot. Dismiss ("Pls.' Opp'n") 5.  Answering that question requires no peculiar "framework"—only the traditional tools of statutory interpretation.[1]  Here, the text, structure, purpose, and legislative history of the relevant statute all point in the same direction:  They indicate that Congress did not intend for the PRC to have jurisdiction over the types of claims Plaintiffs here allege.

As discussed above, the PAEA conferred on the Commission jurisdiction over complaints alleging violations of one of a handful of discrete statutory provisions.  See 39 U.S.C. § 3662(a).

---

[1] Other courts in this District have considered whether the review scheme established by the PAEA—for those claims to which it applies—is exclusive.  See Sears, Roebuck & Co. v. U.S. Postal Serv., 134 F. Supp. 3d 365 (D.D.C. 2015); S. California Edison v. United States Postal Serv., 134 F. Supp. 3d 311 (D.D.C. 2015).  But none have addressed whether the PRC has jurisdiction—exclusive or otherwise—over claims such as these.

USPS contends that one, and only one, of those provisions covers the conduct Plaintiffs allege. In particular, USPS argues that the rejection of Zukerman's stamp design may have constituted "undue or unreasonable discrimination among users of the mail" under 39 U.S.C. § 403(c).  But to frame that argument is to reveal its first major defect:  Zukerman does not allege facts suggesting that USPS discriminated against *him* or any particular class of "users of the mail." Complaints sounding in § 403(c) as a general matter allege that certain *classes* of mail users are being treated differently than other such *classes*, and that there is no good reason for the disparate treatment.  See, e.g., Currier v. Potter, 379 F.3d 716 (9th Cir. 2004) (complaint alleging that USPS's provision of mail service only at a main office, and not at citywide branch offices, unreasonably discriminated against *homeless persons*); UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv., 66 F.3d 621 (3d Cir. 1995) (complaint alleging that a new USPS international mail service, which permitted certain large-volume mailers to negotiate favorable postage rates, unreasonably discriminated against *small-volume mailers*).  Zukerman's complaint, by contrast, alleges facts suggesting that USPS has unconstitutionally discriminated among various stamp *designs*.  See Am. Compl. ¶ 23 (Zukerman's stamp allegedly rejected because his "proposed design was in conflict with Zazzle's content guidelines").  Even USPS frames Plaintiffs' allegations in these terms.  See Def.'s MTD Def.'s Reply 6 ("These allegations form the basis of Plaintiffs' claims, which assert that USPS engaged in discrimination on the basis of content and viewpoint in providing Customized Postage.").  Nothing in the complaint suggests that Zukerman is a member of a class of discriminated-against "users."

Nor does Zukerman's complaint appear to fit § 403(c) any better when the lens is widened, so as to consider the PAEA's structure.  Section 3662, the provision defining the extent

of the PRC's jurisdiction, is titled "[r]ate and service complaints,"[2] and it permits the PRC to

adjudicate alleged violations of five discrete statutory provisions.  39 U.S.C. § 3662.  Aside from

a provision permitting USPS to promulgate regulations, see 39 U.S.C. § 401(2), all of these

provisions expressly govern "postal rates and service standards."  Sears Roebuck, 134 F. Supp.

3d at 382.  For instance, § 101(d) provides that "[p]ostal service rates shall be established to

apportion the costs of all postal operations to all users of the mail on a fair and equitable basis,"

and § 601 prescribes packaging, weight, and postage requirements for deliverable mail.  If "a

word may be known by the company it keeps" under the *noscitur a sociis* interpretive maxim,

Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 559 U.S. 280, 287 (2010)

(quoting Russell Motor Car Co. v. United States, 261 U.S. 514, 519 (1923)), then surely so may

a statutory provision.  And it would be unusual, to say the least, for a provision encompassing

First Amendment law to fraternize with a provision stipulating that "[a] letter may . . . be carried

out of the mails when [it] weighs at least 12 ½ ounces[.]"  39 U.S.C. § 601(b)(2).  Courts have

accordingly read § 403(c) in context, as a provision prohibiting run-of-the-mine postal rate and

service discrimination.  See, e.g., Nat'l Post Office Collaborative v. Donahoe, No. 3:13CV1406

JBA, 2014 WL 4544094, at *4 (D. Conn. Sept. 12, 2014) ("[§ 403(c)'s] prohibition on

discrimination in the provision of services appears logically related to its mandate to 'provide

---

[2] The Court recognizes that "[t]he title of a statute . . . cannot limit the plain meaning of the text."  Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply") (quoting Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212 (1998)).  That is why, for instance, the PRC undoubtedly has jurisdiction to consider complaints alleging that USPS has exceeded its rulemaking authority, see 39 U.S.C. § 401(2), even though this is not a mere "[r]ate and service complaint," 39 U.S.C. § 3662.  But here, there is no clear grant of jurisdictional authority to the PRC over First Amendment-related complaints.  The title of the relevant jurisdictional provision thus aids in clarifying § 403(c)'s scope.

prompt, reliable, and efficient services to patrons in all areas,' including 'rural areas, communities, and small towns where post offices are not self-sustaining' and operate at a loss.").

That Congress intended for the PRC to adjudicate postal "[r]ate and service complaints," 39 U.S.C. § 3662, rather than genuine First Amendment claims, is further confirmed by the types of potential relief the statute identifies.  Although the statute's relief provision states generally that, in the event of a violation, the PRC "shall order that the Postal Service take such action as the Commission considers appropriate in order to achieve compliance with the applicable requirements and to remedy the effects of any noncompliance," id. § 3662(c), that same provision follows up with four illustrative examples.  The PRC may "order[] unlawful rates to be adjusted to lawful levels, order[] the cancellation of market tests, order[] the Postal Service to discontinue providing loss-making products, or requir[e] the Postal Service to make up for revenue shortfalls in competitive products."  Id.  Those are not remedies for First Amendment violations.

PAEA's legislative history supports—and certainly does nothing to undermine—the conclusion that Congress did not intend for the PRC to adjudicate claims that USPS violated the First Amendment.  USPS points to broad statements by the Act's sponsor, Senator Susan Collins, to the effect that the PRC would have "enhanced authority to ensure that there is greater oversight of the Postal Service," 152 Cong. Rec. S00000-15 (2006), S11674, and from former Senate Majority Leader Bill Frist, who explained that the Act was grounded in the "principle [that] [e]very person in the United States—no matter who, no matter where—has the right to equal access to secure, efficient, and affordable mail service."  Id. at S11676.  Def.'s MTD 4; Def.'s Reply 15.  None of these statements suggests an intent on the part of Congress to grant the PRC jurisdiction over the types of claims Plaintiffs allege.  The PRC's remedial authority was

indeed "enhanced"—but not so that it could hear constitutional claims against USPS. Rather, any expansion in authority was for the purpose of adequately "respond[ing] to complaints of pricing, service, or other actions by [USPS] in violation of law," such as by "adjust[ing] the rates of [c]ompetitive products to lawful levels if they are set below attributable costs." H.R. Rep. 109-66, at 52. Congress evidenced no interest in having the PRC adjudicate claims that USPS had violated the First Amendment.

Nor can Congress's choice not to legislate on that point be attributed to any novelty in the nature of the claims here at issue. "It is axiomatic that restrictions upon the mail system implicate the First Amendment." Currier, 379 F.3d at 727. Indeed, the Supreme Court has recognized the validity in Justice Holmes' near-century-old statement that "the use of the mails is almost as much a part of free speech as the right to use our tongues." Blount v. Rizzi, 400 U.S. 410, 416 (1971) (quoting United States ex rel. Milwaukee Social Democratic Pub. Co. v. Burleson, 255 U.S. 407, 437 (1921) (Holmes, J., dissenting)). Unsurprisingly, then, well before PAEA's enactment, USPS had been subject to suit in the district courts on First Amendment grounds. See, e.g., USPS v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114 (1981) (suit to enjoin on First Amendment grounds USPS's enforcement of a statute prohibiting the deposit of unstamped mail in letterboxes); Initiative & Referendum Inst. v. USPS, 417 F.3d 1299 (D.C. Cir. 2005) (First Amendment challenge to USPS regulation prohibiting the solicitation of petition signatures on Postal Service property); American Postal Workers Union, AFL-CIO v. USPS, 830 F.2d 294 (D.C. Cir. 1987) (suit alleging postal employee's discharge was motivated by desire to suppress First Amendment-protected speech); Nat'l Anti-Drug Coal., Inc. v. Bolger, 737 F.2d 717 (7th Cir. 1984) (claim that USPS regulation prohibiting various types of solicitation, vending, and advertising on Postal Service property violated First Amendment); Friedlander v.

USPS, 658 F. Supp. 95 (D.D.C. 1987) (First Amendment challenge to USPS cease and desist orders blocking certain fraudulent mail advertisements).  "[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar" with this precedent, and that it provided a backdrop for the PAEA.  N. Star Steel Co. v. Thomas, 515 U.S. 29, 34 (1995) (quoting Cannon v. University of Chicago, 441 U.S. 677, 699 (1979)).  If Congress had wished to house cases such as these under the PRC's roof, it easily could have indicated that intent.

Locating Plaintiffs' claims outside § 403(c) is also consistent with City & Cty. of San Francisco v. USPS, No. C 09-01964 JSW, 2009 WL 3756005 (N.D. Cal. Nov. 5, 2009), which is—to the Court's knowledge—the only case to have previously considered whether the PRC has exclusive jurisdiction over wholly constitutional claims under the PAEA.  There, Plaintiffs alleged that USPS's "refusal to deliver mail to individual locked mailboxes of residents at Single Room Occupancy buildings . . . violate[d] the equal protection provision of the Fifth Amendment, the right of free speech and freedom of association under the First Amendment, and the right to privacy under the United States Constitution."  Id. at *1.  USPS urged the court to "construe Plaintiffs' claim[s] as statutory claims under [§] 403(c)."  Id. at *3.  The court rejected that invitation, noting that "[b]y its terms, [§] 3662 applies only to violations of the statute or the regulations promulgated pursuant to the statute," and that Plaintiffs had asserted only constitutional claims.  Id.

Similarly, the Court here concludes that the PRC lacks jurisdiction over Plaintiffs' claims because, as a substantive matter, those claims do not fall within the scope of § 403(c).  For the sake of clarity, the Court notes that this holding makes it unnecessary for it to resolve the

question taken up in <u>The Enterprise, Inc. v. Bolger</u>, 774 F.2d 159 (6th Cir. 1985) (per curiam)[3]—

that is, whether the PRC may, or must, hear all claims whose *substance* is cognizable under any

of the provisions listed in 39 U.S.C. § 3662(a), "regardless of how a plaintiff may characterize

such claims."  Pls.' Opp'n 19; <u>see also</u> Def.'s MTD 24; Def.'s Reply 4.  In other words, for the

purpose of determining jurisdiction, should it matter which claims a plaintiff chooses to bring?  It

is true that, in cases like <u>Thunder Basin</u>, courts have been averse to the potential for a plaintiff,

by alleging constitutional and not statutory claims, to effect "an end run around [a mandatory

agency review] process by going directly to district court."  Def.'s MTD 22 (quoting <u>Sturm,

Ruger & Co. v. Chao</u>, 300 F.3d 867, 876 (D.C. Cir. 2002)).   But the statutes at issue in those

cases generally confer jurisdiction over any challenges arising from specified agency *actions*—

such as enforcement actions or adverse employment actions—no matter the *grounds* for the

challenge.[4]  By contrast, the scheme set up by the PAEA is inherently claim-dependent, and the

---

[3] <u>The Enterprise</u> considered a newspaper publisher's claim that a USPS regulation governing eligibility for second-class mailing permits violated the First and Fifth Amendments. The court held that the suit—though framed in constitutional terms—nevertheless challenged "a mail rate or classification decision," and so should be exclusively adjudicated by the PRC's predecessor Commission.  774 F.2d at 161.

[4] For instance, when the Supreme Court evaluated the jurisdictional scope of the Civil Service Reform Act's ("CSRA's") review scheme, the Court explained that "[t]he availability of . . . review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue," and that "[n]othing in the CSRA's text suggests that its exclusive review scheme is inapplicable simply because a covered employee challenges a covered action *on the ground* that the statute authorizing that action is unconstitutional."  <u>Elgin v. Dep't of Treasury</u>, 132 S. Ct. 2126, 2134 (2012) (emphasis added).  Similarly, the Securities Exchange Act provision at issue in <u>Jarkesy</u> applies to any "person aggrieved by a final order of the [Securities and Exchange] Commission."  15 U.S.C. § 78y.  Evaluating the jurisdictional scope of that same provision, the Eleventh Circuit observed that "§ 78y covers all timely-raised objections to a Commission's final order, *without qualification*," and concluded that "[b]y its terms" the provision included the constitutional claims there raised.  <u>Hill v. SEC</u>, 825 F.3d 1236, 1244 (11th Cir. 2016) (emphasis added).

relevant statutory language even suggests an aim on the part of Congress to allow complainants a role in framing their claims (and choosing their forum).  See 39 U.S.C. § 3662(a) (providing that "[a]ny interested person . . . who *believes* the Postal Service is not operating in conformance" with any of the enumerated provisions "may lodge a complaint with the [PRC]" (emphasis added)).  If such was the intent, it would not be the first time Congress has devised a claim-based method for drawing jurisdictional lines.  See Arbaugh v. Y&H Corp., 546 U.S. 500, 513 n.10 ("A claim invoking federal-question jurisdiction . . . may be dismissed [only] . . . if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" (quoting Bell v. Hood, 327 U.S. 678, 682–83 (1946))).

But those are considerations for another day.  Here, the Court merely concludes that Plaintiffs' claims are not cognizable under 39 U.S.C. 403(c).  It follows that Congress did not intend for the PRC to adjudicate those claims, exclusively or otherwise.

## IV.   Conclusion

For the reasons outlined above, the Court will deny USPS's dismissal motion.  An Order accompanies this Memorandum Opinion.


CHRISTOPHER R. COOPER
United States District Judge


Date:   December 6, 2016

12