## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANATOL ZUKERMAN**, <br><br> and <br><br> **CHARLES KRAUSE REPORTING, LLC,** <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES POSTAL SERVICE**, <br><br> Defendant. | Case No. 15-cv-2131 (CRC) |

## <u>MEMORANDUM OPINION</u>

Before last year, the United States Postal Service ("USPS" or "Postal Service") permitted people to order customized postage featuring images of their choosing. The program appeared to be a win-win. USPS generated much-needed revenue while its customers could add a personal touch to their mail. Baby and puppy stamps abounded.

Enter Anatol Zukerman, an 82-year-old Soviet émigré who creates political artwork. In 2015, Zukerman hoped to promote an upcoming gallery exhibition featuring his art. Thinking that customized postage would do the trick, Zukerman placed an order with Zazzle, Inc., an authorized USPS vendor, for 40 stamps depicting one of his drawings. But Zazzle rejected the order, finding that the drawing Zukerman submitted, which criticized the Supreme Court's <u>Citizens United</u> decision, was political in nature and thus violated its content guidelines. Zukerman, along with the gallery that sponsored the exhibition, has been disputing this decision ever since.

Zukerman brought the fight to this Court in late 2015. He alleged that the Postal Service, through Zazzle, engaged in viewpoint discrimination in violation of the First Amendment by

rejecting his stamp design while approving other designs with obvious political content.  After defeating an initial jurisdictional motion by USPS and mounting a successful appeal of the Court's dismissal of the case as moot following the Postal Service's revision of its content guidelines, Zukerman is now back before the Court on remand.  Meanwhile, the Postal Service, citing falling demand and legal challenges (doubtless including this one), has shuttered the customized stamp program entirely.

The parties have completed discovery and cross moved for summary judgment. Zukerman asks the Court to declare that USPS has engaged in unconstitutional viewpoint discrimination.  And to remedy that violation, he seeks an order requiring USPS to print valid U.S. postage bearing his Citizens United drawing or, failing that, to "make reasonable efforts" to recall from circulation or "decertify" all political designs that it previously issued under the program.  The Postal Service disputes the merits of Zukerman's claim.  But should the Court find in his favor, USPS argues that Zukerman's proposed remedies are both unworkable and unreasonable for a host of reasons.

The Court will grant judgment for Zukerman on the merits.  He has demonstrated through discovery that Zazzle accepted orders for at least some custom postage that carried a political message while rejecting his Citizens United design.  And USPS cannot disassociate itself from Zazzle's actions by claiming that the vendor was not a state actor.  The Postal Service is therefore liable for viewpoint discrimination in violation of the First Amendment.

But the Court declines to grant Zukerman's main proposed remedies.  Whether or not the Postal Service has legal authority to print Zukerman's design now that it has discontinued the custom stamp program—an issue the parties vigorously dispute—prudence counsels against compelling USPS to do so.  Among other considerations, discovery has not revealed direct

involvement by USPS in Zazzle's approval of obviously political stamp designs; the evidence instead suggests that Zazzle printed other political designs either inadvertently or in clear contravention of USPS policy (including a few ordered by Zukerman's lawyers to prove up their case). Zukerman also has not established that the relative volume of political designs that made their way into circulation was particularly large. And forcing USPS to issue Zukerman's stamps would open the gates to similar requests from others claiming that their designs were improperly rejected at some point during the sixteen-year history of the program. Nor will the Court order USPS to invalidate, decertify, or recall other "political" postage designs from circulation. That exercise would require the Postal Service to engage in the same "haphazard interpretation[]" of the term "political" that led the D.C. Circuit to strike down the 2018 version of USPS's content guidelines. See Zukerman v. USPS, 961 F.3d 431, 448, 450 (D.C. Cir. 2020). It would also be nearly impossible as a practical matter.

This result does not leave Zukerman without any remedy. The parties declined a prior invitation from the Court to explore alternative measures that USPS might take to vindicate Zukerman's First Amendment interests. The Court will now give them another opportunity, with the benefit of this opinion and a few suggestions of potential options.

## I.   Background

The Court presumes familiarity with its prior opinions in this case. See Zukerman v. USPS, 220 F. Supp. 3d 27 (D.D.C. 2016) ("Zukerman I"); Zukerman v. USPS, 384 F. Supp. 3d 44 (D.D.C. 2019) ("Zukerman II"), rev'd and remanded, 961 F.3d 431 (D.C. Cir. 2020). It will only briefly summarize the background here.

A.  Customized Postage Program

In 2004, USPS launched a customized postage program which allowed customers to print at home "evidence of prepayment of postage" using their own selected images.  39 C.F.R. § 501.1(a).  Through the program, USPS invited the public to "[c]apture life's special moments," such as "birth announcements" and "weddings," "by turning . . . pictures into postage."  Am. Compl. ¶ 13 (alteration in original); see also id. Ex. H.  USPS launched the program in hopes of generating revenue, reaching new mail users, and making the Postal Service "more relevant . . . in today's environment."  USPS SUMF ¶ 5.[1]

Instead of printing the customized postage itself, USPS partnered with a number of authorized vendors to process and issue the postage.  Zazzle.com ("Zazzle") was one such authorized vendor.  See Am. Compl. ¶¶ 7, 13.  To participate in the customized postage program, Zazzle paid USPS an annual fee of $300,000.  USPS SUMF ¶ 6.  In exchange, Zazzle agreed to the terms set forth in its authorized vendor agreement, which, among other things, obligated Zazzle to fulfill orders only for customized postage that complied with USPS's standardized content guidelines.  Pls. SUMF ¶ 48.

"From the outset, the Postal Service sought to use the custom postage program to generate revenue without entangling itself in controversy or exposing itself to legal liability."  Zukerman, 961 F.3d at 436.  To that end, USPS adopted policies to regulate the types of content that could be depicted on customized stamps.  For instance, the terms of Zazzle's 2009

---

[1] For ease of reference, the Court refers to the parties' statements of undisputed facts by citing each party's final response or reply.  Therefore, references to "USPS SUMF" refers to Zukerman's response to USPS's Statement of Undisputed Material Facts, ECF No. 87-1.  Likewise, references to "Pls. SUMF" refers to Zukerman's reply to USPS's response to Zukerman's Statement of Undisputed Material Facts, ECF No. 87-2.

authorization agreement required the company "to establish and maintain an image control process which will ensure that all images appearing in Customized Postage Products . . . conform in every respect to the Statement of Purpose and Standardized Image Guidelines" attached to the contract.  Decl. of Daniel Guarnera Ex. 1 ("Zazzle Agreement") at USPS_00000302.  The attached Standardized Image Guidelines, in turn, required Zazzle "[t]o maintain neutrality on religious, social, political, legal, moral, [and] other public issues."  Id. at USPS_00000307; see also Am. Compl. ¶¶ 10, 26, 34.  Zazzle was to reject any content, "regardless of the viewpoint expressed," that was "[p]artisan or political, . . . including but not limited to content or images supporting or opposing election of any candidate(s) to any . . . governmental office."  Zazzle Agreement at USPS_00000308.  Likewise, USPS barred all "[c]ontent or images actively advocating or disparaging the religious, political, or legal agenda of any person or entity."  Id.  Per the authorization agreement, Zazzle was required to administer these guidelines "to the best of its ability, regardless of the viewpoint expressed by any image submitted for approval."  Id. at USPS_00000302.

Zazzle also maintained its own content guidelines.  For all Zazzle products, the company retained the right to reject any orders that were "deemed offensive or in bad taste" by "the sole judgment of Zazzle."  Am. Compl. ¶ 14; see also id. Ex. I.  As to the customized postage program specifically, Zazzle prohibited users from designing stamps that included "any content or design element that in [Zazzle's] sole judgment and discretion" was found "controversial or offensive."  Am. Compl. ¶ 15; see also id. Ex. J.  Such content, Zazzle explained, included images that "[a]dvocate[d] or protest[ed] any social, political, legal, moral or religious agenda in a way that may appear controversial to others."  Id.

In 2017, USPS issued amended content guidelines for the customized postage program in response to "confusion" caused by "inconsistency of publicly available provider content guidelines."  82 Fed. Reg. 60,117, 60,118 (Dec. 19, 2017) (codified at 39 C.F.R. pt. 501).  The amended guidelines included a new set of "Eligibility Criteria," which established exclusive categories of permissible content.  See 39 C.F.R. § 501.21(c)(1), (2)(i).  Among other things, the amended guidelines prohibited "[a]ny depiction of political . . . content," id., whereas USPS's prior guidelines had merely barred "images *actively advocating*" for or against a political agenda.  Pls. SUMF ¶ 89 (citing 39 C.F.R. § 501.21(b)(2)(iii) (emphasis added)).  The amended regulations went into effect on May 15, 2018.  That same day, USPS allowed Zazzle's customized postage authorization to expire.  Id. ¶ 94.

In the spring of 2020, USPS decided to wind down the customized postage program altogether.  USPS SUMF ¶ 44.  In June 2020, it terminated the last authorized vendor agreement.  Id. ¶ 45.  Later that month, the Postal Regulatory Commission removed customized postage from the Mail Classification Schedule, which lists the products offered to the public by the Postal Service.  Id. ¶ 44.  Finally, on July 10, 2020, USPS rescinded the regulations governing customized postage.  Id. ¶ 45 (citing Elimination of Customized Postage Products, Final Rule, 85 Fed. Reg. 41,394 (July 10, 2020)).

B.  Plaintiffs and the *Citizens United* Stamp

In July 2013, an art gallery owned by plaintiff Charles Krause Reporting, LLC, displayed a drawing by plaintiff Anatol Zukerman depicting Uncle Sam being strangled by a snake marked "Citizens United."  Zukerman II, 384 F. Supp. 3d at 52.  Two years later, Zukerman hoped to promote an upcoming art exhibition at the gallery by creating a custom postage design using the same drawing.  Id.  He turned to the customized stamp program, placing an order with Zazzle for

40 stamps depicting Uncle Sam being strangled by a snake shaped like a dollar sign and emblazoned with the words "Citizens United." Alongside the image of Uncle Sam runs the text: "Democracy Is Not for Sale." See Am. Compl. ¶ 20; see also id. Ex. M. The Court will follow the parties' lead in referring to this design as the "Citizens United design" or the "Citizens United stamp."

Shortly after placing his order, Zukerman received an "Order Cancellation Notice" from Zazzle, informing him that his order was "in conflict with [the company's] content guidelines" because it "contained an image and text that is politically oriented." Pls. SUMF ¶ 59; Am. Compl. ¶ 23 & Ex. M. Zukerman asked Zazzle to reconsider, pointing out that its webpage displayed other political designs as available for sale through the customized postage program. See Pls. SUMF ¶¶ 61, 70, 73–85; Decl. of Julius Taranto ("Taranto Decl.") Ex. 45 (email).[2] Zazzle still refused to fulfill his order.

Three years later, Zukerman again attempted to feature his art on customized postage under USPS's 2018 guidelines, which had since superseded those in effect at the time of Zukerman's initial order. The 2018 design was "substantively identical" to Zukerman's initial Citizens United stamp, with the exception that it added the text: "Democracy is Not for Sale, But

-----

[2] USPS does not directly dispute that Zazzle displayed politically-oriented stamps for sale on the webpage, noting only that it "lacks knowledge of Mr. Zukerman's actions." Pls. SUMF ¶ 61. It is also undisputed that after Zukerman's order was rejected, he informed Zazzle that he had seen various political postage displayed on its webpage. See Taranto Decl. Ex. 45 at ZUCK_0000032 (email informing Zazzle that its webpage featured "material that is primarily partisan or political in nature" including a design that featured "Ted Kruz [sic] for President"). Finally, USPS does not dispute Zukerman's characterization that various postage material displayed as available on Zazzle's webpage qualified as "political." See Pls. SUMF ¶¶ 61, 70, 74–85.

This Artwork Is!"  Pls. Supp. Pleading ¶ 6 ("Supp. Compl."), ECF No. 52.  The 2018 design, too, was rejected for failure to comply with the content guidelines.  Id. ¶¶ 7–9.[3]

C.  Procedural Background

Zukerman and the art gallery that exhibited his work, Charles Krause Reporting, LLC (together, "Zukerman"), brought suit in December 2015, see Compl., ECF No. 1, and filed an amended complaint approximately six months later, see Mot. Am. Compl., ECF No. 17.  USPS moved to dismiss the complaint for lack of jurisdiction in December 2016, see Mot. Dismiss Am. Compl., ECF No. 19, and the Court denied the motion.  See Zukerman I, 220 F. Supp. 3d 27.

In 2018, Zukerman filed a supplemental complaint after USPS issued its new content guidelines.  In the supplemental complaint, Zukerman advanced a facial challenge to the 2018 guidelines and alleged that he was again denied an opportunity to print his artwork on customized postage under the new regulations.  See Supp. Compl. ¶¶ 5–6, 8–9.  USPS moved to dismiss the supplemental complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See Mot. Dismiss Supp. Compl., ECF No. 55.  The Court granted the motion.  As to the Rule 12(b)(1) motion, the Court concluded that claims stemming from Zukerman's 2015 attempt to order the Citizens United stamp were mooted when those regulations were superseded by the 2018 guidelines.  See Zukerman II, 384 F. Supp. 3d at 54–58.  As to the Rule 12(b)(6) motion, the Court concluded that the 2018 guidelines complied with the First Amendment because they placed reasonable restrictions on access to a nonpublic forum.  Id. at 67.

Zukerman appealed.  Two days before the D.C. Circuit heard oral argument, USPS announced that it had decided to terminate the customized postage program in its entirety.  See

---

[3] The 2018 order was rejected by Stamps.com rather than Zazzle, which was no longer an authorized vendor for the customized postage program.  See Supp. Compl. ¶¶ 4, 7–9.

Zukerman, 961 F.3d at 440–41.  The D.C. Circuit nevertheless reversed.  The Circuit first

concluded that the case was not moot because, although the operative guidelines had been

withdrawn and the entire program dismantled, it still was not "absolutely clear that the allegedly

wrongful behavior could not reasonably be expected to recur."  Id. at 446.  The Circuit explained

that Zukerman's injury remained ongoing—that is, he "was (and is) prevented from speaking

through the custom postage program while someone espousing another viewpoint was (and still

is) permitted to do so."  Id. (cleaned up).  The Circuit thus remanded the case for this Court to

consider the merits of Zukerman's viewpoint discrimination claim.  In doing so, however, the

panel opined that "[a]t first blush" Zukerman's allegations "pass[ed] the most basic test for

viewpoint discrimination, which is whether—within the relevant subject category—the

government has singled out a subset of messages for disfavor based on the views expressed."  Id.

(cleaned up).

     As to the challenge to the 2018 regulations, under which Zukerman's revised Citizens

United design was rejected, the Circuit held that those regulations were facially unconstitutional

because they lacked "objective, workable" standards to guide the government's discretion when

determining whether designs featured "political" content.  Id. at 447–49.

     On remand, the parties agree that the only claim remaining is Zukerman's as-applied

challenge to the rescinded 2015 image guidelines, and they have cross moved for summary

judgment.[4]  The Court held a hearing on the motions on April 27, 2021.  Thereafter, the parties

_____

     [4] The parties agree that the claims in their supplemental complaint, which raised a facial
challenge to the Postal Service's 2018 regulations, were mooted by the termination of the
customized postage program.  See Joint Status Report at 1, ECF No. 68.  However, Zukerman
contends that his 2015 viewpoint discrimination claim, which was incorporated into the
supplemental complaint by reference, "remains justiciable."  Id. at 2.

9

submitted supplemental briefing concerning a discovery dispute over USPS's belated disclosure of a witness on remedies.  At the hearing on that dispute, the Court "encourage[d] both sides" to "take a practical approach" towards possible remedial options, which "would serve the public's interest and Mr. Zukerman's personal interest in vindicating his First Amendment rights."  Hr'g Tr. at 49 (Apr. 20, 2021), ECF No. 98.

Both summary judgment motions are ripe for the Court's resolution.

## II.  Legal Standard

Summary judgment is warranted where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if a reasonable factfinder could find for the non-moving party, and a fact is "material" if it can affect the outcome of litigation.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying portions of the record that it believes "demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When evaluating a summary judgment motion, the Court reviews the underlying facts in the non-movant's favor and grants the non-movant all reasonable inferences.  Anderson, 477 U.S. at 255.  "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available."  Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009).

## III.  Analysis

USPS argues first that the Court lacks jurisdiction over this case because Zukerman has not demonstrated standing and his claims are moot.  The Court will tackle these justiciability

arguments before turning to the merits of Zukerman's viewpoint discrimination claim and then to potential remedies.

A.  Justiciability

To present a justiciable case, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 170 (2000) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997)).

Zukerman's theory of injury is that he "was (and is) prevented from speaking through the custom postage program while someone espousing another viewpoint . . . was (and still is) permitted to do so."  Pls. Mot. Summ. J. ("Pls. MSJ") at 28 (quoting Zukerman, 961 F.3d at 446), ECF No. 72.  USPS does not dispute that Zazzle barred Zukerman from printing his Citizens United stamp.  Instead, USPS argues that it is unclear whether any political postage was in circulation when Zukerman filed this suit (which would defeat standing) and remains in circulation now (which would demonstrate mootness).

*1. Standing*

Article III of the Constitution confines federal courts' jurisdiction to actual cases and controversies, and "the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process."  Swanson Grp. Mfg. LLC v. Jewell, 790 F.3d 235, 239 (D.C. Cir. 2015).  Plaintiffs bear the burden to establish standing, which requires "the manner and degree of evidence required at the successive stages of the litigation."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  When evaluating standing, the Court must assume that plaintiffs would prevail on the merits of their claims.  Conference Grp., LLC v. FCC, 720 F.3d 957, 962–63 (D.C. Cir. 2013).

A few undisputed pieces of evidence, taken together, satisfy Zukerman's standing burden on summary judgment.  First, it is undisputed that Zazzle "produced openly partisan designs" between late 2015 and early 2016.  See Pls. SUMF ¶ 62.  The company acknowledged to USPS that "[d]uring a brief period from mid-2015 to early 2016, a few customized postage designs containing political content were submitted" and "mistakenly approved."  Decl. of Rebecca Kopplin ("Kopplin Decl.") Ex. 12.  These included: ten sheets of "Cruz for President 2016" stamps ordered in March and June 2015; nine sheets of "Sanders 2016" stamps sold in August, September, and October 2015; one sheet of "Reagan Bush '84" stamps sold in November 2015; one sheet of "Texas Bush 2016" stamps sold in November 2015; two sheets of "Mike Gin for Supervisor" stamps ordered in August and December 2015; and three sheets of "Trump in 2016" sheets sold in January 2016.  Id. at USPS00000012–13.

It is further undisputed that Zazzle displayed various political postage on its webpage as available for sale during this time.  After Zukerman was notified that his order had been rejected because it bore political content, he asked Zazzle to reconsider, pointing out that the company offered a collection of political postage on its website, including a design that featured "Ted Kruz [sic] for President."  See Taranto Decl. Ex. 45 at ZUCK_0000032; see also Pls. SUMF ¶¶ 59, 61, 70, 74–85; Am. Compl. Ex. M.  According to Zukerman, Zazzle's webpage continued to display "customized postage products advocating political positions" as available for sale "well over two years after Plaintiffs filed their first complaint."  Pls. SUMF ¶ 70.  USPS does not deny that Zazzle continued to offer political postage.  It argues instead that the mere presence of such postage on Zazzle's webpage "does not necessarily indicate that the design had been or would be printed and fulfilled."  See, e.g., Pls. SUMF ¶ 61; see also USPS Mot. Summ. J. ("USPS MSJ") at 13, ECF No. 81.  Perhaps.  But absolute certainty is not the standard.  Zazzle's

display of political postage as available for sale on its webpage creates a strong inference that such postage was, in fact, sold to its customers.  That is sufficient to support Zukerman's theory of injury.

To recap the undisputed facts, Zukerman initiated this action in December 2015.  In the months preceding and immediately following that date, Zazzle fulfilled orders for at least 25 sheets of postage advocating for political candidates.  Additionally, from the time that Zukerman placed his order until years *after* he brought suit, Zazzle displayed various political postage on its webpage as available for sale.  All the while, Zazzle barred Zukerman from printing his proposed Citizens United stamp.  Zukerman has thus established injury-in-fact.

Seeking to avoid this conclusion, USPS points out that two of the electioneering stamps described above were in fact ordered by Zukerman's counsel.  See USPS MSJ at 12–13; USPS SUMF ¶ 26 ("Plaintiffs or their attorneys, agents, or others acting on their behalf purchased and received customized postage from Zazzle in 2015 with a 'Texas Bush 2016' design."), id. ¶ 27 (same for "Trump in 2016" design).[5]  After removing those stamps from the pile, USPS argues, the remaining political postage is insufficient to qualify as an Article III injury.

This argument comes up short.  Zukerman's injury, as described by the D.C. Circuit, is "that the Postal Service continues to give authoritative recognition to some political speech submitted under the prior policy, even as Zukerman's speech . . . is barred."  Zukerman, 961 F.3d at 444.  The Postal Service's recognition of that postage is unaffected by the fact that some (but

---

[5] Seven other stamps relied on in Zukerman's papers (but not mentioned in the Court's analysis above) were also ordered by his counsel.  See USPS SUMF ¶ 28 ("American Rainbow Flag" design); id. ¶ 29 ("Gay Marriage" design); id. ¶ 30 ("Save the Wolves" design); id. ¶ 31 ("Wake Up America Support Our Troops" design); id. ¶ 32 ("Fight FOCA (Baby Feet)" design); id. ¶ 33 ("Honor Those Who Serve on the Thin Blue Line" design); id. ¶ 34 ("Every Child Should Be a Wanted Child" design).

not all) of the messages approved were ordered by Zukerman's agents.[6]  Regardless, Zukerman has demonstrated injury-in-fact, even without the postage ordered by counsel.  Setting that postage to the side, the record contains 21 sheets of postage advocating for various political candidates.[7]  USPS does not suggest what quantity of postage would be required for an Article III injury.  Nor does it cite any authority for the proposition that the number of political stamps printed by Zazzle in this case falls below that threshold.  Meanwhile, there is ample support for the contrary view that, for Article III standing purposes at least, the required threshold is quite low.  See Sch. Dist. of Abington Twp., Pa. v. Schempp, 374 U.S. 203, 225 (1963) ("[I]t is no defense to urge that the religious practices here may be relatively minor encroachments on the First Amendment."); cf. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 567 (2001) ("There is no de minimis exception for a speech restriction that lacks sufficient tailoring or justification"); Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality op.) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").  Wherever that threshold may be, Zukerman has surpassed it.

---

[6] USPS misplaces its reliance on Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 919 (D.C. Cir. 2015), for the proposition that "[p]laintiffs cannot manufacture a live controversy by continuing to hold onto products that they contend should be destroyed."  USPS MSJ at 13 n.4.  The plaintiffs in Food & Water Watch argued that they were injured by steps taken out of fear that a new Department of Agriculture regulation would increase foodborne illness in poultry. 808 F.3d at 918–19.  The Circuit rejected this theory, reasoning that injuries incurred "based on [plaintiffs'] fears of hypothetical future harm . . . 'are not fairly traceable' to the conduct creating that fear."  Id. at 919 (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 416 (2013)).

[7] This figure includes:  ten sheets of "Cruz for President 2016" stamps; nine sheets of "Sanders 2016" stamps; and two sheets of "Mike Gin for Supervisor."  Kopplin Decl. Ex. 12 at USPS00000012.  It does not include the sheets identified as having been ordered by Zukerman's counsel in USPS's statement of undisputed facts.  Additionally, it does not include the one sheet of "Reagan Bush '84 Postage," which, though overlooked by USPS, also appears to have also been ordered by Zukerman's counsel.  See Taranto Ex. 9 at ZUCK_0000068.

2.   *Mootness*

USPS next argues that this case is moot.  A lawsuit becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Zukerman, 961 F.3d at 442.  Defendants bear a "heavy burden" to establish mootness; "a case is only moot if the court is unable to grant any effectual relief whatever to the prevailing party." Ctr. for Food Safety v. Salazar, 900 F. Supp. 2d 1, 5 (D.D.C. 2012) (cleaned up).

USPS contends that the case is moot because Zazzle printed the offending postage years ago and it may "have been lost, destroyed, already sent through the postal system, or . . . otherwise no longer capable of being used as valid postage."  USPS MSJ at 14.  The Court disagrees.  While common sense would suggest that some political postage has been used, USPS offers no evidence that *any* postage has been destroyed or otherwise withdrawn from circulation. And just over a year ago, the D.C. Circuit declared that this case is "emphatically not moot" because "the effects of the alleged violation persist."  Zukerman, 961 F.3d at 443.  "For one thing," the Circuit explained, "Zukerman still does not have his stamps."  Id.  "For another, there is no indication that the 2018 Rule invalidated any postage issued under the prior policy."  Id. Furthermore, the Circuit reasoned, USPS has not "recalled or withdrawn recognition from stamps issued in violation of the then- or now-applicable guidelines."  Id. at 443–44.  There is no indication that any of these circumstances have changed since the Circuit issued its opinion.  To be sure, USPS has since ended the customized postage program.  However, this development did not "invalidate[] any postage issued under the prior policy," permit Zukerman to print his design, or "recall[] . . . recognition from stamps issued in violation" of USPS's 2015 or 2018 Guidelines. Id.  Under the Circuit's reasoning, then, Zukerman's 2015 claim thus continues to present a live controversy.

B.  Merits

Moving to the merits, USPS's primary argument is that Zazzle's administration of the customized postage program is not attributable to the government via the state action doctrine. Additionally, USPS briefly contends that Zazzle's actions, even if attributable to the state, comply with the First Amendment.

 *1.  State action*

The First Amendment "prohibits only *governmental* abridgment of speech"; it "does not prohibit *private* abridgment of speech." Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019) (emphasis in original).  Yet, "[a] private entity can qualify as a state actor in a few limited circumstances—including, for example, . . . when the private entity performs a traditional, exclusive public function."  Id. (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 352–54 (1974)).  Private conduct also may be attributed to the state "where the activities of the government and the entity in question are so intertwined that a 'symbiotic relationship' exists between them."  Foster v. Ripley, 645 F.2d 1142, 1146 (D.C. Cir. 1981) (quoting Jackson, 419 U.S. at 357).

Zukerman argues that the state action requirement is satisfied here under both theories.  First, he contends that Zazzle "perform[ed] a traditional, exclusive public function" via its role in the customized postage program.  See Halleck, 139 S. Ct. at 1928; Pls. MSJ at 19–20.  The Court will follow the parties' lead in referring to this theory of state action as the "public function" test.  Second, he argues that USPS and Zazzle "enjoy[ed] a symbiotic relationship" while operating the customized postage program such that USPS is "liable for [Zazzle's] wrongdoing."  Pls. MSJ at 20.  Because the Court concludes that the public function test is satisfied, it need not decide whether Zukerman has also established state action under the symbiotic relationship test.

The modern public function test derives from <u>Jackson v. Metropolitan Edison Co.</u>, which held that a private utility company was not a state actor despite being subject to "extensive state regulation" and enjoying a state-granted monopoly in providing electrical services in the region. 415 U.S. at 350–51. The Supreme Court explained that it had previously "found state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State," and "the supplying of utility service" was not one of those powers. <u>Id.</u> at 352–53. The Court expounded on the test in <u>Halleck</u>, holding that an operator of public-access television channels was not a state actor subject to the First Amendment under the public function test. 139 S. Ct. at 1928. "It is not enough," the Court explained, that the government "exercised the function in the past, or still does. And it is not enough that the function serves the public good or the public interest in some way." <u>Id.</u> at 1928–29. Instead, to satisfy the public function test, the private entity must function in a role that is "traditionally *and* exclusively performed" by the state. <u>Id.</u> at 1929 (emphasis in original).

<u>Halleck</u> reiterated that "'very few' functions" satisfy the public function test. <u>Id.</u> The Court has found the test satisfied by private entities that hold elections or run a company town. <u>See id.</u> (collecting cases). By contrast, it has declined to find state action when private entities perform such functions as: "running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, and supplying electricity." <u>Id.</u>

Zazzle was performing a role traditionally and exclusively reserved for the state when it determined what content could be displayed on U.S. postage. Article I of the Constitution gives Congress the authority to "establish Post Offices and post Roads." U.S. Const. art. I, § 8, cl. 7. The Supreme Court has interpreted this provision as giving Congress "[f]ull, sovereign control

over the whole subject . . . to be exercised by any appropriate means." Ex parte Jackson, 96 U.S. 727, 731 (1877). 39 U.S.C. § 404(a), in turn, grants USPS the authority to "provide and sell postage stamps" and "provide philatelic services." See also 18 U.S.C. §§ 1693–1695 (governing USPS's delivery of mail). And USPS regulations confirm the importance of these unique statutory powers to its mission. See 39 C.F.R. § 501.2(a) (systems of generating and printing postage are "essential to the exercise of [the Postal Service's] specific powers to prescribe postage and provide evidence of payment of postage under 39 U.S.C. 404(a)(2) and (4)").

USPS nonetheless argues that it is not the exclusive provider of postage services in the country. It points out that "private companies and individuals" frequently use leased postage meter machines or computers to print indicia of prepayment on their postage. See USPS MSJ at 23–24. It also highlights a predecessor to the customized postage program, which permitted operators of postage meters to affix advertisements known as "ad plates" near the indicia of prepayment on metered mail. Id. But these examples do not alter the conclusion that USPS has exercised exclusive authority over determining the content of postage, which is the activity at issue in this case.

Through the customized postage program, USPS gave Zazzle discretionary authority to determine what designs were appropriate for display on U.S. postage. Mailroom personnel operating a company postage meter make no such determinations.[8] The use of ad plates—which permitted individuals to print a personalized message alongside indicia of prepayment on

---

[8] For the same reason, the Court rejects USPS's argument that "[s]tamps issued by USPS are available for sale in grocery stores, big-box stores, and convenience stores without any suggestion that those enterprises are somehow all state actors." USPS Reply at 16, ECF No. 96. Unlike those stores, Zazzle *both* issued postage *and* determined what content was appropriate to appear on that postage.

metered mail—comes closer to resembling the function at issue in this case. But operators of metered mail machines were permitted to print ad plates *only if* provided express authorization by USPS. See 39 C.F.R. § 501.2; 39 C.F.R. § 501 (1995). The ad plate program is thus indicative of—not contrary to—the government's exclusive authority over the design and content of valid U.S. postage.

The Second Circuit's decision in Cooper v. USPS, 577 F.3d 479 (2d Cir. 2009), supports the Court's conclusion. Cooper held that a private postal facility operated by a church acted as the state when it sold postal products and processed mail pursuant to a contract with the Postal Service, such that the facility's display of religious material violated the Establishment Clause. Id. at 492–94. In so ruling, the court rejected USPS's argument that the facility was not performing a state function, explaining that "Congress granted to the USPS the *exclusive duty* to create and operate Post Offices with responsibility to accept and process mail, *sell postal products*, and, of course, participate in the safe carriage of mail." Id. at 492–93 (emphases added). "Accordingly," the private postal facility qualified as "a state actor under the public function test because it performs . . . activities that traditionally have been the exclusive, or near exclusive, function of the State." Id. at 493 (cleaned up).

USPS fails to refute Cooper's logic. It contends that the postal facility in Cooper performed different functions than Zazzle—i.e., it operated akin to a physical post office whereas Zazzle never "accepted mail for transmission or marked or processed mail for delivery." USPS Reply at 16. That may be correct as a factual matter, but it misses the point. The key question is whether Zazzle performed a traditionally exclusive public function by determining the content of valid U.S. postage when fulfilling customers' orders. Cooper holds that USPS has exclusive authority over "the sale of postage for letters, acceptance of mail for transmission, and the

marking and processing of mail for delivery." 577 F.3d at 493. Making discretionary judgments about the content that may be printed on valid U.S. postage falls squarely within that general ambit. Indeed, the role performed by Zazzle is arguably *more* exclusive to USPS than that performed by the postal facility in Cooper, given that the Postal Service's monopoly on post offices contains an exception for private services like UPS and FedEx. See id. at 485 n.2.

One final point. USPS briefly argues that even if Zazzle was a state actor in some respects, the Court should not hold USPS responsible for actions taken by Zazzle that conflicted with USPS's guidelines. This argument fails. As explained above, Zazzle performed a state function when it determined the content of valid U.S. postage. The public function exception extends to a private entity's exercise of powers exclusively reserved to the state. It is not limited to the private entity's correct or lawful exercise of that power. See, e.g., 42 U.S.C. § 1983 (creating a cause of action for individuals whose rights were violated "under color of" state law); Williams v. United States, 396 F.3d 412, 414 (D.C. Cir. 2005) ("Courts generally treat" the "under color of law" test for § 1983 claims "as the same thing as the 'state action' required under the Fourteenth Amendment"). Zazzle's conduct is therefore attributable to the Postal Service.

### 2. *Viewpoint discrimination*

Moving to Zukerman's claim of viewpoint discrimination, "[i]t is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828 (1995). Viewpoint discrimination is a particularly "egregious form of content discrimination," which occurs when the government restricts speech based on "the specific motivating ideology or the opinion or perspective of the speaker." Id. at 829. "[T]he test for viewpoint discrimination is whether— within the relevant subject category—the government has singled out a subset of messages for

disfavor based on the views expressed." Matal v. Tam, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring); accord Zukerman, 961 F.3d at 446.  When applying this test, the "the term viewpoint discrimination" is understood "in a broad sense." Matal, 137 S. Ct. at 1763 (plurality op.).  In Matal, for example, the Supreme Court held the Lanham Act's "disparagement clause," which denied registration to trademarks that were "offensive to a substantial percentage of the members of any group," constituted viewpoint discrimination because "[g]iving offense is a viewpoint." Id.

In reversing this Court's order granting USPS's motion to dismiss, the D.C. Circuit observed that "[a]t first blush," Zukerman's "allegations pass[ed] the most basic test for viewpoint discrimination." Zukerman, 961 F.3d at 446 (cleaned up).  The record on summary judgment now confirms the Circuit's initial impression.

Of course, "the government rarely flatly admits it is engaging in viewpoint discrimination." Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth., 901 F.3d 356, 365 (D.C. Cir. 2018).  In lieu of such evidence, plaintiffs may demonstrate viewpoint discrimination based on a pattern of enforcement that "evince[s] a governmental policy or custom of intentional discrimination on the basis of viewpoint or content." Frederick Douglass Found., Inc. v. District of Columbia, --- F.Supp.3d ----, 2021 WL 1166841, at *12 (D.D.C. Mar. 26, 2021).  Implicitly drawing upon that authority, USPS asserts that Zukerman has not submitted enough political postage to establish that Zazzle was applying its guidelines in a viewpoint-discriminatory manner.

To shore up his claims of viewpoint discrimination, Zukerman has submitted 101 custom stamps issued by Zazzle that, in his view, constitute "political" postage.  Zukerman does not explain why each stamp is political, and the designs run the gamut.  On the clearly-political end

of the spectrum is a stamp depicting the flag associated with an avowed white nationalist group operating in the Pacific Northwest.  See Taranto Decl. Exs. 116–117.  On the other end is an array of postage that Zukerman appears to deem political based on the mere fact that the stamp depicts—even tangentially—a national or regional flag.  See, e.g., id. Exs. 72, 86, 144, 167 (depicting dogs with the American flag in the background); id. Exs. 75–76, 85, 92, 98, 108, 110, 171.  Most of these depictions contain the American flag, which in some, but not all, circumstances convey a political message.  Cf. Texas v. Johnson, 491 U.S. 397, 406 (1989) (explaining that the "conduct" of burning the American flag—during a presidential nominating convention—was political).  Others include decidedly apolitical images of the French flag (as part of a Parisian-themed bridal shower), Taranto Decl. Ex. 95, and the Maryland state flag (as a backdrop for celebrating the University of Maryland's women's basketball team), id. Ex. 69.  USPS asserts that the 101 stamps highlighted by Zukerman are either not political or were issued by mistake, but, like Zukerman, it does not expound on each one individually.  In any case, the Court need not wade too deeply into this inchoate dispute because, as explained below, Zukerman prevails on his viewpoint discrimination claim regardless.

Here, Zukerman need not rely on a pattern of enforcement because he has *direct* evidence of Zazzle's viewpoint discrimination.  Again, Zazzle implemented USPS's content guidelines by prohibiting any content that it found "controversial" while permitting other content that it deemed non-controversial.  To take just one example, "Zazzle approved, printed, and sold two customized postage products celebrating and/or advocating in favor of same-sex marriage."  Pls. SUMF ¶ 81.  Zazzle explained that it intentionally printed these designs because they "recognize[d] an advancement in civil rights that was made three years ago with the Supreme Court's declaration [in Obergefell v. Hodges, 576 U.S. 644 (2015)] that same-sex marriage is a

protected right under the U.S. Constitution."  Pls. SUMF ¶ 82.  By contrast, Zazzle determined

that Zukerman's viewpoint, which expressed a negative opinion of <u>Citizens United</u> rather than a

positive one of <u>Obergefell</u>, crossed the line.  This determination was necessarily viewpoint-

based.

 The Supreme Court's decision in <u>Iancu v.  Brunetti</u>, 139 S. Ct. 2294 (2019), provides a

helpful point of comparison.  <u>Iancu</u> held that the Lanham Act's bar on trademarks consisting of

"immoral or scandalous matter" was viewpoint discriminatory because it "distinguishe[d]

between two opposed sets of ideas:  those aligned with conventional moral standards and those

hostile to them; those inducing societal nods of approval and those provoking offense and

condemnation."  <u>Id.</u> at 2300.  That rule, the Court observed, resulted in several "viewpoint-

discriminatory" determinations.  <u>Id.</u>  Namely, the PTO "refused to register marks communicating

'immoral' or 'scandalous' views about (among other things) drug use, religion, and terrorism.

But all the while, it has approved registration of marks expressing more accepted views on the

same topics."  <u>Id.</u>  In a nutshell, "'Love rules'?  'Always be good'?  Registration follows.  'Hate

rules'?  'Always be Cruel'?  Not according to the Lanham Act's 'immoral or scandalous' bar."

<u>Id.</u>

 Here, Zukerman does not bring a facial challenge to USPS's 2015 guidelines or Zazzle's

bar on "controversial" content.  After all, neither policy has been in effect since 2018.  Zukerman

lodges a more limited claim—that Zazzle engaged in viewpoint discrimination when, for

example, it barred him from expressing his views about <u>Citizens United</u> but permitted other

individuals to voice their views of <u>Obergefell</u>.  Zazzle made that determination on the ground

that one viewpoint (that <u>Obergefell</u> constitutes an advancement in civil rights) is so universally

accepted that it does not qualify as controversial—let alone political—whereas the other (that

<u>Citizens United</u> rendered democracy "for sale") is not.  This determination necessarily turned on the views expressed in the submitted designs.[9]  Consequently, it violated "a core postulate of free speech law," which is that "[t]he government may not discriminate against speech based on the ideas or opinions it conveys."  <u>Iancu</u>, 139 S. Ct. 2299.

Zukerman is thus entitled to summary judgment on his claim that USPS is liable for viewpoint discrimination in violation of the First Amendment.

C.  <u>Remedy</u>

The Court now turns to the question of remedy.  The Circuit noted that USPS had "raise[d] doubts about whether the relief Zukerman seeks"—namely some type of injunction— "is workable."  <u>Zukerman</u>, 961 F.3d at 444.  "But," the Circuit said, "that is a matter relating to the exercise rather than the existence of judicial power."  <u>Id.</u> (quoting <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289 (1982)).

The Court will address this issue without ordering a specific remedy at this juncture. Rather, the Court will ask for further briefing from the parties on the appropriateness and workability of potential forms of relief.  In ordering supplemental briefing after hearing

---

[9] Similarly, Zazzle defended its decision to issue stamps containing the messages "Every Child Should Be a Wanted Child" and "Support Our Troops" by invoking implicit value judgments about the views conveyed.  <u>See</u> Taranto Decl. Ex. 4 at USPS_00222643–44.  As to the former design, Zazzle explained that the message "every child should be a wanted child" is non-controversial since "[n]o reasonable person would ever assert an opposing view:  that some children should be unwanted children."  <u>Id.</u>  As to the latter, the company similarly concluded that "no reasonable person would argue that America should not support its troops."  <u>Id.</u> at USPS_0022264.  Like the PTO's application of the Lanham Act in <u>Iancu</u>, Zazzle's implementation of USPS's content guidelines "distinguishe[d] between two opposed sets of ideas:  those aligned with conventional moral standards and those hostile to them; those inducing societal nods of approval and those provoking offense and condemnation."  139 S. Ct. at 2300; <u>see also id.</u> (listing examples of the "viewpoint-discriminatory application" of the Lanham Act's bar on immoral or scandalous content).

argument on the parties' discovery dispute in April 2021, the Court encouraged the parties to consider a "practical approach" to remedial options that would address the evident concerns over workability and legal authority, while still serving "the public's interest and Mr. Zukerman's personal interest in vindicating his First Amendment rights." Hr'g Tr. at 49. The resulting submissions fell short of the Court's expectations. Now that the Court has found for Zukerman on the merits, and with the guidance in this opinion, the Court hopes that a final round of briefing will provide more clarity and specificity on this issue. As will be explained, the Court will not grant certain of the relief proposed by Zukerman but is open to other options.

Several of the forms of proposed relief would be styled as a type of injunction. Zukerman bears the burden of satisfying the well-established four-factor test for a permanent injunction. See eBay v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Under that test, he must show:

> (1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id. Granting or denying injunctive relief "is an act of equitable discretion by" the Court. Id. (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 320 (1982)). Moreover, the "abandonment" of "a challenged practice" is "an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice"; sometimes "the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary." City of Mesquite, 455 U.S. at 289 & n.10.

At first blush, Zukerman has demonstrated that he is entitled to some type of relief—but what specifically the Court should order USPS to do is a more complicated question. First,

because Zukerman has succeeded on his as-applied viewpoint discrimination claim, he has shown an irreparable injury.  See Mills v. District of Columbia, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (holding that "the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting Elrod, 427 U.S. at 373)).  Second, Zukerman has suffered no economic damages from this violation of his First Amendment rights, so there are no adequate remedies at law.  The final two factors "merge when," as here, "the Government is the opposing party," see Nken v. Holder, 556 U.S. 418, 435 (2009), and "it is always in the public interest to prevent the enforcement of unlawful speech restrictions."  Guffey v. Duff, 459 F. Supp. 3d 227, 255 (D.D.C. 2020), appeal docketed, Nos. 20-5183 & 20-5208 (D.C. Cir. June 27 & July 15, 2020).

But herein lies the rub:  The customized postage program no longer exists, and USPS no longer has any contractual relationship with third-party vendors who could print private custom stamps.  See 85 Fed. Reg. 41,394.  One way "to prevent the enforcement of unlawful speech restrictions," Guffey, 459 F. Supp. 3d at 255, would be to prevent the enforcement of the 2015 image guidelines as to the Citizens United stamp.  The Court cannot do that, however, because USPS has opted to close the forum entirely, and thus USPS is not currently enforcing *any* restrictions on private speech—it is not printing individuals' customized stamps.  See Garnier v. O'Connor-Ratcliff, 513 F. Supp. 3d 1229, 1253 (S.D. Cal. 2021) (after concluding plaintiffs proved a First Amendment violation based on being blocked from social media pages, noting "the consequences of [that] ruling" could include defendants "closing their public pages entirely"), appeal docketed, Nos. 21-55118 & 21-55157 (9th Cir. Feb. 12 & Feb. 24, 2021).

Zukerman asks that the Court order USPS to print the Citizens United stamp, but the Court declines this request.  One route to this remedy would require USPS to reinstate something

like the now-terminated customized postage program, likely sans the speech restrictions.  That

would open the door for others to claim their designs were improperly rejected and sue to have

their stamps printed also.  Such broad consequences might flow from a successful facial

challenge to an existing program.[10]  But as the Supreme Court said in, well, <u>Citizens United</u>, "the

distinction between facial and as-applied challenges . . . goes to the breadth of the remedy

employed by the Court," with as-applied challenges coming with "a narrower remedy."  <u>Citizens

United v. FEC</u>, 558 U.S. 310, 331 (2010) (quoting <u>United States v. Treasury Emps.</u>, 513 U.S.

454, 477–78 (1995)).

A narrower remedy is warranted here.  For one, "the likelihood of further violations"—

i.e., other private, customized stamps being printed— "is sufficiently remote to make" this

particular type of relief inappropriate.  <u>See</u> <u>City of Mesquite</u>, 455 U.S. at 289 n.10.  In this case,

USPS would have to resurrect an entire program to print the stamp, not simply "redraft one part"

of a policy.  <u>See</u> <u>Ne. Pa. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.</u>, 938 F.3d 424,

442 (3d Cir. 2019); <u>Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.</u>, 975 F.3d 300, 317

(3d Cir. 2020) ("[T]he only hardship to [the agency] is the burden of redrafting the political and

public debate provisions of its *current* Advertising Standards" (emphasis added)).  The current

regulatory regime does not make this that simple of a solution.  <u>Cf.</u> <u>Karst Envtl. Educ. & Prot.,

Inc. v. EPA</u>, 475 F.3d 1291, 1298 (D.C. Cir. 2007) (agency had no authority "to impose

mitigation measures" plaintiff requested as relief).

Another option, in theory, would be for USPS to print the stamp itself.  But under the

customized postage program, "images or other matter [was] not provided, approved, or endorsed

---

[10] If unlimited political speech had to be allowed, however, USPS may well decide—as it in fact did—to terminate the program entirely.  <u>See</u> <u>Garnier</u>, 513 F. Supp. 3d at 1253.

in any way by the Postal Service." See 39 C.F.R. § 501.7(d)(3).  That disclaimer has particular

force in this context, because "avoiding the appearance of political entanglement . . . is [a]

particularly weighty" justification for not placing the government's imprimatur on individuals'

customized political stamps.  See Del Gallo v. Parent, 557 F.3d 58, 73 (1st Cir. 2009) (noting

"the history of the Postal Service and its problematic historical associations with partisan

politics.").  Indeed, it is undisputed that USPS terminated Zazzle from the customized postage

program because of the noncompliant customized postage products it approved, which presented

risks to USPS's business and brand interests.  See USPS SUMF ¶¶ 37–38.

Whether or not USPS has or could easily obtain the authority to print the stamp (which

the parties hotly contest), and even if there are other potential means to print the stamp (like

through contracting), additional equitable considerations counsel against the Court ordering this

remedy.  First, although Zazzle was a state actor and thus Zazzle's actions can be imputed to the

Postal Service, USPS was, relatively speaking, less involved in the actual viewpoint

discrimination against Zukerman.  Zazzle was the main offender, at least based on the record

before the Court.  This point weighs in favor of a milder remedy.  And again, USPS terminated

Zazzle from the program because it approved noncompliant products, posing risks to USPS's

interests.  Second, Zukerman has not established that the relative number of political designs that

were actually circulated on stamps approved by Zazzle is that large—compared to the *5-million*

designs the company reviewed.  See USPS SUMF ¶ 39.  Plus, Zukerman's counsel are the ones

who ordered at least some of the political stamps in circulation.  USPS may not be able to escape

liability for Zazzle's issuing a small number of political designs while rejecting Zukerman's

Citizens United stamp.  But this too weighs in favor of a milder remedy.

For all these reasons, the Court will not order that USPS print the Citizens United stamp.

Nor will the Court grant Zukerman's primary alternative form of relief:  Ordering USPS to invalidate, decertify, or actively search out and recall pieces of customized postage that have "political" designs.  These options raise significant problems.  Most importantly, the Circuit held that determining which postage counts as "political" as to the 2018 rule was so unworkable that the ban on "political" content was facially unconstitutional.  Zukerman, 961 F.3d at 447–52. This remedy would require USPS to undertake the same subjective evaluation of what is "political" when attempting to locate and decertify postage.  But even if this remedy were somehow logistically feasible (again, Zazzle approved millions of custom designs), it would be a massive drain on public resources to require USPS to re-review each design to isolate the relatively few that potentially convey "political" content.

But all this does not leave Zukerman without a remedy.  As noted, the Court will give the parties another opportunity to propose alternative measures that USPS might take to vindicate Zukerman's First Amendment interests.

A few possibilities come to mind.  One, the Court could order USPS to provide a link on a website to this opinion and accompanying order with a picture of the Citizens United stamp for some period of time.  Two, USPS has suggested that establishing an "administrative process for the voluntary exchange of customized postage and post a webpage . . . may be less burdensome." USPS Reply at 14.  Zukerman has also conceded that "[e]ven if Plaintiffs' counsel were the only people to take USPS up on [a] public offer" to exchange the customized postage they purchased "this Court would have achieved some concrete relief for Plaintiffs."  Pls. Opp'n at 26, ECF No. 87.  The parties may wish to expound on this option.  Three, the Court could award declaratory relief and nominal damages.  Cf. Uzuegbunam v. Preczewski, 141 S. Ct. 792, 802 (2021) (holding that "[b]ecause every violation of a right imports damage, nominal damages can

redress" a First Amendment "injury" (cleaned up)), cited in Pls. Supp. Remedies Br. at 4, ECF No. 99.

With this guidance, the Court looks forward to more focused briefing on a proposed remedial order.  A separate briefing schedule will follow.

**IV.   Conclusion**

For the foregoing reasons, the Court will grant [72] Plaintiffs' Motion for Summary Judgment and deny [81] Defendant's Motion for Summary Judgment.  The Court will defer entry of a final order pending receipt of supplemental briefing on a proposed order that includes equitable relief.


                                                          _____
CHRISTOPHER R. COOPER
United States District Judge

Date:  September 24, 2021